## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JEREMY SESSUMS ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                   **NO. 24-104**

**SHELL USA, INC. ET AL.**                                   **SECTION "B"(5)**

<u>**ORDER AND REASONS**</u>

Before the Court are defendants Shell USA, Inc., Shell Offshore Inc., and Doye Sepulvado's motion to dismiss (Rec. Doc. 8); plaintiffs Jeremy Sessums individually and as next of friend of J.S., M.S., and H.S.'s opposition (Rec. Doc. 30); and defendants' reply (Rec. Doc. 31). For the following reasons,

**IT IS ORDERED** that defendants Shell USA, Inc., Shell Offshore Inc., and Doye Sepulvado's motion to dismiss (Rec. Doc. 8) is **GRANTED IN PART**, in accordance with this Order. Plaintiffs shall file an amended complaint **no later than April 23, 2024.** Failure to amend the complaint will lead to the dismissal of the action.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Alleging neck, back, and head injuries from work performed as a roustabout on an offshore platform in the Gulf of Mexico, plaintiff Jeremy Sessums brings this suit on his own behalf and as next friend of his three minor children. *See* Rec. Doc. 6 at 1–2, 4 ¶¶3, 5, 8, 22 (first amended complaint) (describing the platform as "located in the Gulf of Mexico in the Garden Banks area in Block Number 426 south of Cameron Parish, Louisiana"). Citing federal jurisdiction through the Outer Continental Shelf Lands Act ("OCSLA") and, additionally, through diversity jurisdiction of 28 U.S.C. § 1332 as a Mississippi citizen, Mr. Sessums contends he was an employee of Helmerich & Payne, Inc., which contracted him to work on a platform owned by Shell Gas Pipeline Company, operated by Shell Offshore Inc., and servicing pipeline of Shell USA, Inc. *Id.* at 1–3 ¶¶1, 2, 14

1

("On or about January 10, 2023, and at all material times herein, [Shell Offshore Inc.] was contracted with H&P to provide certain work; including the performance of oil and gas drilling operations, aboard the rig."). Mr. Sessums identifies on the platform Doye Sepulveda as the "company man" for Shell USA, Inc. and David Boudreaux as the "rig safety representative" for Safety Management Systems, LLC, which was contracted to perform safety functions on the platform. *Id.* at 1, 3 ¶¶1, 17. Finally, among the various platform-related entities, Mr. Sessums describes Danos, LLC as the "helicopter landing officer," tasked to "supervise, coordinate and be responsible for ensuring the safety of all personnel traveling to or from the rig using a helicopter." *Id.* at 1, 3 ¶¶1, 13. Against all but his employer, Helmerich & Payne, Inc., Mr. Sessums brings the current suit.

Specifically, Mr. Sessums contends that on January 10, 2023 an unnamed deck coordinator for Danos, LLC "requested" Mr. Sessums "go and work the choppers[;]" thereafter, Mr. Sessums was "ordered . . . to place the chocks on the wheels." *Id.* at 3 ¶¶19, 21. As Mr. Sessums describes the sequence of events, "Plaintiff never previously placed wheel chocks on a helicopter and was not trained to do so and during the process injured himself." *Id.* at 4 ¶22. Mr. Sessums alleges various theories of negligence "caused by the acts and/or omissions of Defendants." *Id.* at 4 ¶23. In addition to his own damages, Mr. Sessums also pleads on behalf of his three minor children "a loss of consortium, society, companionship and services, entitling them to bring this cause of action for their own damages." *Id.* at 5 ¶25.

In joint partial motions to dismiss, plaintiffs moved for the dismissal of Shell Gas Pipeline Company and Mississippi Canyon Gas Pipeline, LLC, formerly known as Shell Gas Pipeline Company, L.L.C. *See* Rec. Docs. 33 and 37. In its own motion to dismiss, Mississippi Canyon contended that it was improperly served, that Shell Gas Pipeline Company was improperly issued

service to, and that neither has any ownership of the platform in question. *See* Rec. Doc. 25-1 at 1–2 (memorandum in support of motion). In response to the joint motions to dismiss, the Court dismissed Shell Gas Pipeline Company and Mississippi Canyon Gas Pipeline, LLC. *See* Rec. Docs. 34 and 38.

Shell USA, Inc., Shell Offshore Inc., and Doye Sepulvado[1] (collectively "Shell defendants") move to dismiss the claims against them, which is the motion currently before the Court.[2] Rec. Doc. 8. Plaintiffs oppose. Rec. Doc. 30.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff,

---

[1] Shell defendants correct the misspelling in the first amended complaint of Doye Sepulvado's name. *See* Rec. Doc. 8-1 at 2.
[2] At the time of the filing, defendants Shell USA, Inc., Shell Offshore Inc., and Doye Sepulvado had common counsel with defendant David Boudreaux. Mr. Boudreaux subsequently moved to substitute his enrolled counsel to be the same as Safety Management Systems, LLC, which the Court so ordered. *See* Rec. Doc. 15. As Shell defendants make clear in their reply to plaintiffs' opposition, the current motion is not brought on behalf of Mr. Boudreaux. *See* Rec. Doc. 31.

but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A complaint does not meet the plausibility standard "if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (citing *Twombly*, 556 U.S. at 555).

### B. OCSLA

As provided for in OCSLA, federal courts have jurisdiction over cases "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development or production of the minerals, of the subsoil and seabed of the outer Continental Shelf[.]" 43 U.S.C. § 1349(b)(1). "To determine whether a cause of action arises under OCSLA, the Fifth Circuit applies a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the [Outer Continental Shelf]; and (3) the plaintiff's injury would not have occurred but for his employment." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013). There is no debate that OCSLA governs plaintiffs' suit.

Where OCSLA attaches, the federal court applies the law of the adjacent state as surrogate federal law. *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009). "[F]or state law to apply as surrogate federal law, three conditions must be met: (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own

force. (3) The state law must not be inconsistent with Federal law." *Id.* (internal quotation omitted). As it is not inconsistent with federal law, "Louisiana tort law applies on fixed platforms located on the Outer Continental Shelf." *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 976 (5th Cir. 1999) (citing *Rodrigue v. Aetna Casualty & Surety Company,* 395 U.S. 352, 366 (1969)).

### C.  Louisiana Tort Law

Without naming a precise cause of action, plaintiffs' claims sound in negligence. *See* Rec. Doc. 6 at 4 ¶23. Plaintiffs generally confirm the tort action in their opposition to Shell defendants' motion to dismiss: "In the context of Plaintiffs' claims, the facts pled put Defendants on notice Plaintiffs complain of both: 1) the conditions of the premises of the Auger; and 2) the negligence of Defendants' in failing to discover, warn and intervene to correct hazardous conditions onboard the Auger." Rec. Doc. 30 at 4. After its general introduction to tort liability, the Louisiana Civil Code describes how negligence gives rise to it: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." La. Civ. Code art. 2316. Louisiana subscribes to a duty-risk tort scheme, with plaintiffs needing to prove "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris,* 923 So. 2d 627, 633 (La. 2006)).

Evaluating these negligence requirements from a motion to dismiss standard, we fail to find plaintiffs' plausibly stating a claim against Shell defendants. Throughout plaintiffs' six-page,

seven-defendant complaint, allegations are threadbare. Plaintiffs plead that Mr. Sessums was "requested" to work the choppers, "ordered . . . to place chocks on the wheels[,]" and "during the process injured himself." Rec. Doc. 6 at 3–4 ¶¶19, 21, 22. The order came from an unnamed deck coordinator for Danos, LLC, an entity plaintiffs describe as the "helicopter landing officer," tasked to "supervise, coordinate and be responsible for ensuring the safety of all personnel traveling to or from the rig using a helicopter." *Id.* at 1, 3 ¶¶1, 13. 19, 21. As relevant background information, plaintiffs submit Mr. Sessums had never performed the task previously and had not been instructed on the task. *Id.* at 4 ¶22. Based on these scant details, we struggle to observe a plausible claim even as to defendant Danos, LLC.

And the picture is even more obscured as to Shell defendants. In their first amended complaint, plaintiffs describe Shell defendants as the owner of the pipeline, the operator of the platform, and the company man of the platform operator. Although a pleading is not assessed from its probability of success or the detailed contents of a legal theory, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiffs, *arguendo*, present a conceivable negligence claim against Shell defendants, but absent is a showing of factual allegations that could plausibly satisfy Louisiana's five duty-risk elements.

Our conclusion would be the same if Shell USA, Inc. had been identified as the owner of the platform in question. Of course, plaintiffs have not so identified Shell USA, Inc. in their first amended complaint, nor subsequently in their filings have they requested the Court take notice of Shell USA, Inc.'s ownership. This is so even after now-dismissed defendant Mississippi Canyon's communication with plaintiffs on the issue, *see* Rec. Doc. 25-1 at 3, Mississippi Canyon's motion to the Court to take judicial notice of the Bureau of Ocean Energy Management's ("BOEM") online database's listing of Shell USA, Inc. as platform owner, *see id.* at 1; Rec. Doc. 25-2 at 1,

and Shell Offshore Inc.'s own admission in Shell defendant's motion to dismiss: "Shell Offshore Inc.—not Shell Gas Pipeline Company—is the owner of this platform[,]" Rec. Doc. 8-1 at 2 n.1. No matter, even if a Shell defendant were alleged to be owner of the platform, plaintiffs provide only faint factual allegations and conclusory legal theories as to the platform owner's possible liability. More is needed to surmount the pleading stage.

### D. Amendment of Complaint

As Federal Rule of Civil Procedure 15 instructs of complaint amendments, courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In application of Rule 15, the Fifth Circuit has observed "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In evaluating the propriety of an amendment, courts should assess "a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).

Although Shell defendants initially requested, as an alternative to dismissal, that plaintiffs amend their complaint, Shell defendants now contend plaintiffs have shown through their pleadings an inability "to provide some support for the idea that they can amend the allegations to state valid claims." Rec. Doc. 31 at 2. Plaintiffs disagree, requesting the opportunity to amend. Rec. Doc. 30 at 5–6. Therein, plaintiffs indicate they have more substantive allegations not currently before the Court: "Plaintiffs provided Defendants with a recitation of the facts to the best

of his ability as a non-expert who could not simultaneously be swung around the platform of the Auger and also be observing the action from afar." *Id.* at 5. Further, without citing the location of the assertion in their complaint, plaintiffs insist they "specifically pled [Mr. Sessums] was harmed by a defect or vice in operations of the Auger platform and its helideck." *Id.* at 3. Continuing their expansion of or elaboration on the complaint, plaintiffs aver they "identified that there was an overt lack of congruency and consistency with the safety, supervision and oversight by the Defendants' employees and the Company men they employed and supervised." *Id.* In consideration of these extra-complaint allegations, it is not evident that amendment would be futile.

If plaintiffs choose to so amend, they should be cognizant of Louisiana's duty-risk requirements as to *each named defendant*. As a hornbook rule, Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Thus, as to each named defendant in a suit, a plaintiff must plausibly plead factual support for a cause of action. Accordingly, plaintiffs should avoid "a complaint which includes multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *O'Neal v. Universal Prot. Serv., LLC*, No. 21-737, 2022 WL 1631970, at *5 (M.D. La. May 23, 2022) (quoting *In re Ozcelebi*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021) (discussing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

New Orleans, Louisiana, this 9th day of April, 2024

_____

SENIOR UNITED STATES DISTRICT JUDGE