UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JEREMY SESSUMS ET AL.                                    CIVIL ACTION

VERSUS                                                   NO. 24-104

SHELL USA, INC. ET AL.                                   SECTION "B"(5)

<u>ORDER AND REASONS</u>

Before the Court are defendants Shell USA, Inc. and Doye Sepulvado's motion to dismiss (Rec. Doc. 46); plaintiffs Jeremy Sessums individually and as next of friend of J.S., M.S., and H.S.'s opposition (Rec. Doc. 48); and defendants' reply (Rec. Doc. 49). For the following reasons,

**IT IS ORDERED** that defendants Shell USA, Inc. and Doye Sepulvado's motion to dismiss (Rec. Doc. 46) is **GRANTED**.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Alleging neck, back, and head injuries from work performed as a roustabout on an offshore platform in the Gulf of Mexico, plaintiff Jeremy Sessums brings this suit on his own behalf and as next friend of his three minor children. *See* Rec. Doc. 44 at 1–3 ¶¶ 3, 5, 6, 14, 20 (second amended complaint) (describing the platform as "located in the Gulf of Mexico in the Garden Banks area in Block Number 426 south of Cameron Parish, Louisiana"). Citing federal jurisdiction through the Outer Continental Shelf Lands Act ("OCSLA") and, additionally, through diversity jurisdiction of 28 U.S.C. § 1332 as  Mississippi citizens, plaintiffs contend Sessums was an employee of Helmerich & Payne, Inc. ("H&P"), which contracted him to work on a platform operated by Shell Offshore Inc. and servicing pipeline of Shell USA, Inc. *Id.* at 1–2 ¶¶ 1, 2, 14 ("On or about January 10, 2023, and at all material times herein, [Shell Offshore Inc.] was contracted with H&P to provide certain work; including the performance of oil and gas drilling operations, aboard the rig."). Plaintiffs identify on the platform Doye Sepulveda as the "company man" for Shell USA,

1

Inc. and David Boudreaux as the "rig safety representative" for Shell Offshore Inc. *Id.* at 1–2 ¶¶ 1, 9, 12. Additionally, Safety Management Systems, LLC was contracted to perform safety functions on the platform, coordinating its responsibilities with Boudreaux. *Id.* at 1–2 ¶¶ 1, 16. Finally, among the various platform-related entities, plaintiffs describe Danos, LLC as the "helicopter landing officer," tasked to "supervise, coordinate and be responsible for ensuring the safety of all personnel traveling to or from the rig using a helicopter." *Id.* at 1–2 ¶¶ 1, 13. Against all but Sessums's employer, H&P, plaintiffs bring the current suit.

Specifically, plaintiffs contend that on January 10, 2023 an unnamed deck coordinator for Danos, LLC "requested" Sessums "go and work the choppers[;]" thereafter, Sessums was "ordered . . . to place the chocks on the wheels." *Id.* at 3 ¶¶ 17, 19. As Sessums describes the sequence of events, "Plaintiff never previously placed wheel chocks on a helicopter and was not trained to do so and during the process injured himself." *Id.* at 3 ¶ 20. Plaintiffs allege that Shell Offshore Inc., Shell USA, Inc., Danos, LLC, and Safety Management Systems, LLC "together occupied, managed, operated, and controlled the Auger platform and pipeline, including the Helipad, and all activities conducted thereon, as well as providing trained employees to do the work, providing training, supervision, direction, and control over all aspects of the work." *Id.* at 3 ¶ 21. Although specifying alleged duties of each defendant, plaintiffs seemingly contend the corporations and companies had a collective duty in their operations, to provide a safe workplace, and to provide job necessities, such as staffing, training, and supervision. *Id.* at 3 ¶ 22. Further, all named defendants are accused of a "lack of congruency and consistency" in these matters. *Id.* at 4–5 ¶ 32.

Plaintiffs' second amended complaint was filed after the Court granted in part a motion to dismiss by Shell USA, Inc., Shell Offshore Inc., and Doye Sepulvado[1]. *See* Rec. Doc. 43. Therein,

---

[1] Moving defendants again correct the misspelling of Doye Sepulvado's name in plaintiffs' complaint. *See* Rec. Doc. 46-1 at 1 n.1 ("The Complaint's spelling of this Defendant's name is incorrect. The correct spelling is Doye

we instructed, "[i]f plaintiffs choose to so amend, they should be cognizant of Louisiana's duty-risk requirements as to *each named defendant*." *Id.* at 8 (emphasis in original). Plaintiffs' second amended complaint, in turn, contains individualized paragraphs of "acts and/or omissions" that they claim proximately caused Sessums's injuries. Rec. Doc. 44 at 6–13 ¶¶ 39–47. Curiously, each paragraph provides an identical, eighteen-point list, and three paragraphs are repeated wholly. *Compare id.* at 7 ¶ 40, *with id.* at 9–10 ¶ 43 (Shell Offshore Inc.); *compare id.* at 8–9 ¶ 42, *with id.* at 10–11 ¶¶ 44, 45 (Safety Management Systems LLC).

Shell USA, Inc. and Doye Sepulvado (collectively "Shell defendants") now move to dismiss the claims against them. Rec. Doc. 46. Plaintiffs oppose. Rec. Doc. 48.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff,

---

Sepulvado."); Rec. Doc. 8-1 at 2 ("The Complaint also identifies Doye Sepulvado (incorrectly referred to as 'Doye Sepulveda') as Shell USA's onsite representative[.]").

but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A complaint does not meet the plausibility standard "if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (citing *Twombly*, 556 U.S. at 555).

### B. Louisiana Tort Law

As this Court has previously assessed, Louisiana tort law applies to plaintiffs' cause of action, serving as surrogate federal law for the incident occurring on the Outer Continental Shelf. *See* Rec. Doc. 43 at 4–5. Under Louisiana tort law, a plaintiff must prove negligence through a duty-risk scheme. *See Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris,* 923 So. 2d 627, 633 (La. 2006)). The scheme requires a showing of five elements: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Id.* "Whether a duty is owed is a question of law; whether defendant has breached a duty owed is a question of fact." *Brewer v. J.B. Hunt Transp., Inc.*, 2009-1408 (La. 3/16/10), 35 So. 3d 230, 240 (citation omitted).

4

Appropriate for motion-to-dismiss consideration, parties dispute the legal question of duty as it pertains to Sepulvado and Shell USA. In evaluation of the question, we first turn to plaintiffs' second amended complaint. Plaintiffs allege that Sessums worked as a roustabout for H&P. Rec. Doc. 44 at 2 ¶ 6. H&P, in turn, was contracted by platform operator Shell Offshore Inc. to perform "oil and gas well drilling and related services." *Id.* at 2 ¶ 7. Shell Offshore Inc., in turn, contracted Safety Management Systems, LLC "to perform all safety related functions aboard the rig" and Danos, LLC "to supervise, coordinate and be responsible for ensuring the safety of all personnel traveling to or from the rig using a helicopter." *Id.* at 2 ¶¶ 13, 16. Danos, LLC, in turn, placed an employee ("Helideck's Deck Coordinator") aboard the platform. *Id.* at 3 ¶ 17. The Helideck's Deck Coordinator, in turn, "requested that Plaintiff go and 'work the choppers,' the injury-causing incident. *Id.* at 3 ¶¶ 17, 20.

Absent from the five layers of turns—from employment to incident—are Sepulvado and Shell USA. Sepulvado is allegedly the "company man" for Shell USA on the platform. *Id.* at 2 ¶ 9. Shell defendants seemingly concede as much. *See* Rec. Doc. 46-1 at 5–6. Based on the position and allegations, Shell defendants argue Louisiana's standard for managerial employee negligence should apply. *Id.* at 2–3. Following the line of cases begun with *Canter v. Koehring Co.*, Louisiana law establishes managerial negligence where four criteria are met:

> First, the employer must owe a duty of care to the plaintiff, the breach of which caused the injury at issue.
>
> Second, the employer must have delegated that duty to the employee at issue.
>
> Third, the employee at issue must have breached the duty through his own personal fault.
>
> And fourth, the employee's breach must have been more than a simple breach of a "general administrative responsibility," but must instead stem from the breach of a duty the employee owed the plaintiff personally that was not properly delegated to another employee.

*Rolls ex rel. A.R. v. Packaging Corp. of Am. Inc.*, 34 F.4th 431, 437–38 (5th Cir. 2022) (citing *Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973)).

Application of Louisiana's managerial negligence theory, however, is inapt here. Shell defendants cite no caselaw that applies managerial negligence to the actions (or inactions) of a company man. Rather, liability of company men is regularly evaluated through the relationship between their actions and those of other contractors. *See Graham v. Amoco Oil Co.*, 21 F.3d 643, 646–47 (5th Cir. 1994). A company man does not owe a duty to employees of other contractors unless he affirmatively assumes the duty or creates a workplace hazard himself. *See Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 732 (5th Cir. 2021). Where such operational control exists, injury liability is assessed through Louisiana's standard negligence principles. *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911–12 (5th Cir. 1997).

Put simply, plaintiffs do not plausibly put forward any allegations that establishes a duty of Sepulvado as to Sessums. Instead, plaintiffs merely contend that Sepulvado "had the authority and duty to monitor the operations of the Auger platform and pipeline, and to stop unsafe practices and behavior from occurring thereon." Rec. Doc. 44 at 3 ¶ 24. This allegation is threadbare from three considerations.

First, this "duty to monitor . . . and to stop unsafe practices" mirrors the allegations made against defendants Shell Offshore Inc. (the platform operator) and David Boudreaux (the platform operator's safety representative). *Id.* at 3–4 ¶¶ 25, 27. The conclusory nature of the allegations against Sepulvado is even clearer when plaintiffs' allegations of breach are considered. As previously noted, the eighteen breaches alleged against Sepulvado are the same as those made against every other named defendant. *See id.* at 6–13 ¶¶ 39–47. At best, plaintiffs present the

"formulaic recitation of elements of a cause of action," which the Fifth Circuit has determined deficient at the pleading stage. *See Whitley*, 726 F.3d at 638.

Second, the allegations against Sepulvado do not nudge claims made against the company man from conceivable to plausible. *See Twombly*, 550 U.S. at 570. Nowhere is it alleged that Sepulvado affirmatively assumed a workplace safety duty or created the helicopter hazard himself. No duty vis-à-vis Sessums is plausible.

Third, Sepulvado is even more removed from the incident at issue because he is the alleged company man not of the platform owner or operator, but of the pipeline owner. "Made Defendants herein are . . . Doye Sepulveda [sic] (hereinafter referred to as 'Company Man')." Rec. Doc. 44 at 1 ¶ 1.H. "Pipeline Owner's onsite operations were supervised by its representative, Company Man." *Id.* at 2 ¶ 9. Plaintiffs separately allege Shell Offshore Inc. to be the platform operator. *Id.* at 1 ¶ 1.B. Plaintiffs separately allege David Boudreaux to be Shell Offshore Inc.'s "representative in all safety matters on the rig[.]" *Id.* at 2 ¶ 12. In their opposition to the instant motion, plaintiffs aver they have noticed complaints of "1) the conditions of the premises of the Auger; and 2) the negligence of Defendants' in failing to warn and intervene to correct known hazardous conditions onboard the Auger." Rec. Doc. 48 at 3–4. A pipeline owner and its company man do not have liability implicated thereby, nor have plaintiffs pled plausible allegations for such a notice to sustain a cause of action against Shell defendants. Sepulvado and Shell USA remain at a distance from this action.

Finally, as to Shell USA, plaintiffs provide only a conclusory argument in their opposition that the corporation itself owed a legal duty to Sessums: "Plaintiffs allege that Shell USA, Inc. and Shell Offshore Inc. (collectively 'Shell') and/or their affiliates own and/or operate the tension-leg platform on the Auger pipeline." *Id.* at 7. However, no factual allegations are provided for Shell

USA's ownership or operation of the platform. Further, even this faint possibility of duty is undercut by plaintiffs' complaint allegations. Throughout their complaint, plaintiffs refer to Shell Offshore Inc. as "Platform Operator." *See, e.g.,* Rec. Doc. 44 at 1 ¶ 1. "Platform Operator is responsible for the operating and supervising the oil and gas drilling process on the rig." *Id.* at 2 ¶ 11. The web of contractor connections allegedly emanates from Shell Offshore Inc., the platform operator. On the other hand, Shell USA is allegedly merely the pipeline owner of "320 miles of offshore pipeline in the Gulf of Mexico and supervises and runs various pipeline projects for oil and gas exploration and production." *Id.* at 2 ¶ 8. Sessums's complained-of injuries on a platform neither owned nor operated by Shell USA do not evidence a legal duty to plaintiffs.

The Court has already afforded plaintiffs the chance to amend their claims against Shell defendants. However, as indicated above, the amended allegations fail to establish a legal duty of Sepulvado or Shell USA. As the Fifth Circuit has determined, further amendment to a complaint is futile where the deficiencies cannot be cured. *See Jones v. Greninger,* 188 F.3d 322, 327 (5th Cir.1999); *see also Juarez v. Short,* 84 Fed. App'x 420, 424 (5th Cir. 2003). Here, any amendment would be futile, requiring claims against Sepulvado and Shell to be dismissed.[2]

New Orleans, Louisiana, this 22nd day of May, 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs fail to specify how their request for discovery could conceivably alter the foregoing analysis. That request may now be moot if plaintiffs have acknowledged, per Shell defendants' reply memorandum, that Shell USA, Inc. was not the owner or operator of the subject platform. *See* Rec. Doc. 49 at 1–2.