UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEREMY SESSUMS, ET AL**<br>**Plaintiffs,**<br><br>vs.<br><br>**SHELL USA, INC., ET AL**<br>**Defendants.** | **CIVIL ACTION NO. 2:24-cv-00104**<br><br>**MAGISTRATE:**<br>**MICHAEL B. NORTH** |

### SHELL OFFSHORE INC.'S SUR-REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Shell Offshore Inc. ("Shell"), respectfully submits this Sur-reply Memorandum in Support of its Motion for Summary Judgment (R. Doc. 63). Plaintiff's Amended and Supplemental Opposition (R. Doc. 108-2) provides no evidence showing the existence of a genuine issue of material fact for trial and, therefore, dismissal of all causes of action asserted by Plaintiff against Shell is appropriate.

**I.    Premises Liability**

Plaintiff presents no evidence of any physical defect in the helipad, helicopter, or the wheel chocks at issue, let alone a defect which allegedly caused injury. Nevertheless, Plaintiff will not concede to dismissal of his premises liability cause of action. Instead, and for the first time, Plaintiff now alleges that he was injured by defective paperwork on site. The argument is unsupported, specious, and relies on a fundamental misunderstanding of Louisiana law.

Plaintiff directs the Court to Article 2317.1 of the Louisiana Civil Code, which establishes a cause of action for defective things in a defendant's custody which cause damage to a plaintiff. R. Doc. 108-2 at pp. 18-19.[1] Plaintiff argues:

---

[1] Plaintiff also references La. C.C. art. 2322 which concerns defective buildings. However, Plaintiff provides the Court with no evidence showing any defect in any building (or appurtenance) owned or operated by Shell.

> There can be no question that a JSA along with an FAA flight schedule or helicopter flight plans…are in fact "things" within the purview of 2317.

*Id* at p. 19. Thus, Plaintiff takes the position that pieces of paper, namely a Job Safety Analysis form ("JSA") and flight plans/schedules, are "things" containing defects that caused injury to the Plaintiff. Confusingly, Plaintiff admits that he has no JSA to present to the Court (R. Doc. 108-2 at p. 8 ("A JSA…never occurred and has never been produced.")), and he fails to present any flight plan or flight schedule documents for the Court's consideration. In the absence of proof supporting the argument, dismissal is appropriate for this reason alone.

In any event, Plaintiff erroneously conflates corporeal and incorporeal things. Corporeals are things that have a body, whether animate or inanimate, and can be felt or touched. La. Civ. Code art. 461. Corporeal movables are things, whether animate or inanimate, that normally move or can be moved from one place to another. La. Civ. Code art. 471. Incorporeals are things that have no body, but are comprehended by the understanding. La. Civ. Code art. 461. An idea or formula is an incorporeal movable. *Tedeton v. Tedeton*, 46,901 (La.App. 2 Cir. 2/8/12, 11–12); 87 So.3d 914, 921.

The paper substance of JSAs or flight plans are corporeal movables—objects which can be felt or touched. The contents of those papers are ideas in word form, *i.e.*, incorporeal. Plaintiff does not allege that the corporeal paper itself caused injury, as no paper cuts were alleged. Plaintiff instead complains of the *ideas presented on such papers in the form of written words (or lack thereof)* as the purported cause of injury. A defect, within the meaning of Article 2317.1, is a condition or imperfection ***in an object*** that causes it to present an unreasonable risk of injury to persons exercising ordinary care. *Conner v. Kraemer-Shows Oilfield Servs., LLC*, 33 F.Supp.3d

725, 728 (W.D. La. 2014) (emphasis added). Because Plaintiff has shown no defect in the physical corpus of any piece of paper at issue, nor any evidence that such defect caused Plaintiff's back injury, his Article 2317.1 premises liability cause of action should be dismissed with prejudice.

## II. Negligence

Plaintiff presents no evidence that Shell supervised or controlled his work at the time of the alleged accident. He had no communications with any Shell employee immediately before, during, or after the helideck operations at issue. To the contrary, Plaintiff repeatedly concedes that Shell's independent contractors were responsible for all aspects of the helideck operations:

- "Danos handled all helideck operations, but twice a hitch (on Thursdays) when Danos crew went home, H&P worked the choppers. When H&P handled helideck, the H&P Helicopter Landing Officer ("HLO") named Troy Simmons…coordinates this for H&P on Rig. … HLO: supervises operations. ONLY HLO supposed to chalk wheels." R. Doc. 108-2 at p. 7.

- "Shell contracted its helideck operational duties to Danos." R. Doc. 108-2 at p. 11.

- "[Taylor Thibodeaux] of Danos was responsible for supervising the helideck operations and inspections. As the HLO, [Taylor Thibodeaux] was responsible for daily Helideck readiness inspections. Importantly, [Taylor Thibodeaux] is also identified as Shell's Logistics' representative and agent." R. Doc. 108-2 at p. 12.

The independent contractor defense shields Shell from liability in this case because Shell is not liable for the activities of an independent contractor committed in the course of performing its duties under the contract." *Hosey v. Shell Oil Co.*, 494 F.Supp.3d 381, 388 (E.D. La. 2020) citing *Davis v. Dynamic Offshore Resources*, 865 F.3d 235, 236 (5th Cir. 2017). Exceptions to this defense do not apply, as Plaintiff has not shown that the operations were ultrahazardous or that Shell exercised operational control over Plaintiff's work. *Id*. citing *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 329 (5th Cir. 1987). Plaintiff presents no arguments or evidence to rebut Shell's independent contractor defense and it is effectively unopposed.

3

In a desperate attempt to salvage a viable cause of action, Plaintiff attacks a party that has already been dismissed from this litigation and then attempts to raise a new theory of liability. These are red herrings.

All of Plaintiff's causes of action asserted against alleged Shell "company man," Doye Sepulvado, were dismissed on May 22, 2024. *See* R. Doc. 51 (Judgment) and R. Doc 50 (Order and Reasons). Nevertheless, Plaintiff argues that Sepulvado is "personally liable" in this case and that his alleged negligence should be imputed to Shell as its agent. R. Doc. 108-2 at pp. 21-22. In dismissing claims against Sepulvado, District Judge Lemelle reminded the parties that "[a] company man does not owe a duty to employees of other contractors unless he affirmatively assumes the duty or creates a workplace hazard himself. Where such operational control exists, injury liability is assessed through Louisiana's standard negligence principles. R. Doc. 50 at p. 6, citing *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 732 (5th Cir. 2021) and *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911–12 (5th Cir. 1997). Importantly, Plaintiff has not alleged or presented evidence showing that Sepulvado is Shell Offshore Inc.'s employee or agent.[2] Even if such evidence had been presented, applicable law brings the Court full-circle to the key legal issue— Plaintiff must prove that Shell Offshore Inc. (through Sepulvado) exercised direct operational control over Plaintiff's work on the helideck. No such evidence has been presented.

Finally, Plaintiff argues Shell failed to timely warn him of an incoming helicopter. R. Doc. 108-2 at p. 22. This argument fails because Plaintiff has not presented competent evidence creating a genuine issue for trial with respect to causation.

---

[2] R. Doc. 50 at 7 ("Sepulvado is even more removed from the incident at issue because he is the alleged company man not of the platform owner or operator, but of the pipeline owner. "Made Defendants herein are . . . Doye Sepulveda [sic] (hereinafter referred to as 'Company Man')." Rec. Doc. 44 at 1 ¶ 1.H. "Pipeline Owner's onsite operations were supervised by its representative, Company Man." *Id*. at 2 ¶ 9. Plaintiffs separately allege Shell Offshore Inc. to be the platform operator. *Id*. at 1 ¶ 1.B.")

A plaintiff asserting a negligence claim must prove the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element) and, separately, the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element). S*ee e.g., Farrell v. Circle K. Stores, Inc*., 359 So. 3d 467, 473 (La. 2023). Cause-in-fact usually is a "but for" inquiry, which tests whether the accident would have happened but for the defendant's substandard conduct. *Malta v. Herbert S. Hiller Corp*., 2021-00209, p. 16 (La. 10/10/21); 333 So.3d 384, 398. The determination of legal cause/scope of the duty involves a purely legal question and "ease of association" is the proper inquiry. *Id*. at 399 (internal citations omitted). Such an inquiry questions how easily one associates the plaintiff's complained of harm with the defendant's conduct. *Id*.

Plaintiff allegedly sustained a back injury when he attempted to lift wheel chocks weighing between 10 and 15 pounds laying adjacent to the wheels of a landed helicopter. The Plaintiff himself initially placed the chocks on the helicopter wheels with no problems, and the helicopter passengers and luggage were then unloaded.[3] Then, new passengers and luggage were loaded onto the chopper.[4] The helicopter engines revved up, and Plaintiff was directed to remove the chocks.[5] Plaintiff claims the chocks had become "stuck" or "[]wedged" by the helicopter wheels but he "had no idea."[6] When he pulled on them, he felt a "pop" in his back.[7]

Nothing in Plaintiff's description of the alleged accident suggests that a timely warning of an incoming helicopter would have prevented the accident. Even in the absence of a warning,

---

[3] R. Doc. 63-3 at 67:24-68:8.
[4] *Id*. at 72:5-18.
[5] *Id*. at 72:22-73:10.
[6] *Id*. at 73:11-74:3.
[7] *Id*.

5

*Plaintiff was already aware of the helicopter's presence before he was injured* and no additional warning of its arrival was needed. There was sufficient time before the accident for Plaintiff to make his way to the helideck and arrive on the scene; to chock the wheels; to unload passengers and luggage; to reload new passengers and luggage; and, to witness the chopper's engine re-start. Thus, Plaintiff had sufficient time to use stop-work authority; to advise his immediate supervisors of his lack of training and experience; to ask questions about how to perform his work; or, to ask another worker to step in. An advanced warning of the helicopter's initial arrival would not have changed this, and there is no ease of association between the alleged back injury and a lack of advance warning of an incoming chopper.

For all of the additional reasons, the Court should dismiss Plaintiff's causes of action against Shell, with prejudice.

Dated: March 17, 2025

Respectfully submitted,

**KUCHLER POLK WEINER, LLC**

*/s/Mark E. Best*
JANIKA D. POLK (#27608) T.A.
MARK E. BEST (#29090)
CONNOR J. REINOSO (#38383)
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112
Telephone: (504) 592-0691
Facsimile: 1(844) 731-2302
jpolk@kuchlerpolk.com
mbest@kuchlerpolk.com
creinoso@kuchlerpolk.com
***Attorneys for Shell Offshore Inc.***