## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SESSUMS, ET AL.**                                            **CIVIL ACTION**

**VERSUS**                                            **NUMBER: 24-104**

**SHELL USA, INC., ET AL.**                             **DIVISION: "5"**

### ORDER AND REASONS

Before the Court are several Motions. Defendant, Shell Offshore Inc. ("Shell Offshore"), filed a Motion for Summary Judgment (Rec. doc. 63). Jeremy Sessums, individually and as next of friend of his three minor children ("Plaintiffs"), filed an Opposition (rec. doc. 91), a Motion to Strike and Alternatively Continue Shell Offshore's Motion for Summary Judgment (rec. doc. 85), a Motion for Leave to File Amended and Supplemental Opposition to Shell Offshore's Motion for Summary Judgment (rec. doc. 108), and a Motion for Summary Judgment. (Rec. doc. 113). Shell Offshore submitted a Reply Memorandum in Support of their Motion for Summary Judgment (rec. doc. 90), a Motion for Leave to File Sur-Reply Memorandum in Support of Motion for Summary Judgment (rec. doc. 110), and an Opposition to Plaintiffs' Motion for Summary Judgment. (Rec. doc. 114). Having reviewed the parties' memoranda, the record, and the applicable law, the Court rules as follows.[1]

### I. Background

This case arises from an accident that occurred on an offshore tension-leg platform on the Auger pipeline located in the Gulf of Mexico ("the rig"). (Rec. doc. 44 at 2 ¶ 5). Plaintiff, Jeremy Sessums, brought this suit under the Outer Continental Shelf Lands Act ("OCSLA"), individually and as next of friend of his three minor children, alleging neck, back, and head

---

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) on December 18, 2024. (Rec. doc. 68).

1

injuries that he allegedly suffered while working as a roustabout on the rig. (*Id.* at 1–3 ¶¶ 2, 3, 5, 6). Sessums was an employee of Helmerich & Payne, Inc. (H&P), an independent contractor of Shell Offshore. (Rec. doc. 63-2 at 2 ¶ 3.2). H&P contracted with Shell Offshore to provide oil and gas drilling operations aboard the rig, which is owed by Shell USA, Inc. ("Shell USA"). (Rec. doc. 44 at 2 ¶¶ 6, 7, 14).

Several entities and individuals were ostensibly responsible for safety on the rig. David Boudreaux was Shell USA and Shell Offshore's "rig safety representative." (*Id.* at 1-2 ¶¶ 1, 12). Safety Management Systems, L.L.C. was contracted to perform "all safety related functions" aboard the rig, which were carried out by Boudreaux. (*Id.* at 1-2 ¶¶ 1, 16). Shell USA's company man, who supervised its onsite operations, was Doye Sepulvado. (*Id.* at 1-2 ¶¶ 1, 9). And finally, Danos, L.L.C., employed the "helicopter landing officer," who was contracted to supervise, coordinate, and be responsible for the safety of personnel travelling by helicopter. (*Id.* at 1-2 ¶¶ 1, 13). Plaintiffs brought this suit against all above-named entities and individuals, save for Sessums' employer, H&P.

Plaintiffs allege in their Second Amended Complaint (the active complaint here) that, on or about January 10, 2023, Sessums was performing his duties as roustabout until around 11 a.m., when the "Helideck's Deck Coordinator," an unnamed Danos employee, requested that he go and "work the choppers." (*Id.* at 3 ¶¶ 17, 19). In his deposition, Sessums clarified that Jacob Keyes, an H&P employee, gave that order, not a Danos employee. Keyes got a phone call from "Scully," Sessums' direct supervisor, stating that Sessums had to go "work the chopper." (Rec. doc. 63-3 ¶¶ 36:8-10, 48:6-24). Sessums was thereafter "ordered . . . to place chocks on the wheels." (Rec. doc. 44 at 3 ¶¶ 17, 19). Sessums proceeded to place the chocks,

2

and during the process, injured himself. (*Id.*). Plaintiffs allege that Sessums was not trained to place wheel chocks on a helicopter and had never previously done so. (*Id.* at 3 ¶ 20).

Plaintiffs brought this action, enunciating no actual cause of action, but it appears their claims sound in negligence. They contend that Shell USA, Shell Offshore, Danos, and Safety Management Systems, "together occupied, managed, operated, and controlled the Auger platform and pipeline, including the Helipad, and all activities conducted thereon, as well as providing trained employees to do the work, providing training, supervision, direction, and control over all aspects of work." (*Id.* at 3 ¶ 21). Plaintiffs go on to allege specific duties owed by each Defendant related to safety on the rig. (*Id.* at 3 ¶¶ 22, 23, 24, 25, 26, 27, 28, 29, 30, 31). According to Plaintiff, Shell Offshore, among other Defendants, "had a duty to exercise reasonable care in carrying out their operations conducted thereon, to provide a safe workplace for Plaintiff and the other workers; and to provide necessary level of staffing, training, supervision, direction, management, proper equipment, and adequate communications for the safety of the workers." (*Id.* at 3 ¶ 22).

With respect to each Defendant, Plaintiffs assert that "there was a glaring and overt lack of congruency and consistency with the safety, supervision and oversight . . . with respect to the operations of the Auger platform and pipeline and the workers they employed, monitored, trained, housed, and supervised." (*Id.* at ¶ 32). Plaintiffs also list specific failures on the part of the Defendants, which they describe as "foreseeable and producing cause of the incident and of Plaintiff's injuries and damages" and having "created a dangerous and unsafe condition for workers on the premises . . ." (*Id.* at ¶¶ 33, 34, 35, 36, 37). Finally, Plaintiffs list 18 identical "acts and/or omissions" separately for each Defendant that they claim proximately caused Sessums' injuries. (*Id.* at ¶¶ 39, 40, 41, 42, 43, 44, 45, 46, 47).

3

Shell USA, Shell OffShore, and Sepulvado filed a motion to dismiss, which the Court granted in part, affording Plaintiffs the opportunity to amend their complaint for the second time, which they did. (Rec. doc. 43 at 1). Thereafter, the Court granted a motion to dismiss brought by Shell USA and Sepulvado, concluding that the allegations in Plaintiff's Second Amended Complaint failed to establish a legal duty of either movant and declining to afford Plaintiffs an additional chance to amend their claims. (Rec. doc. 50 at 8).

On December 13, 2024, Shell Offshore filed its own motion for summary judgment. (Rec. doc. 63). Plaintiffs moved to strike or continue oral hearing on the Motion for Summary Judgment, alleging that Shell Offshore failed to produce documents that it relied upon in its Motion for Summary Judgment. (Rec. doc. 85). Shortly thereafter, the Court reset oral hearing on the Motion for Summary Judgment and Shell Offshore produced the responsive documents, rendering the Motion to Strike or Continue moot. (Rec. docs. 95, 96). After a grant of an extension of time (rec. doc. 82) and an extension of time to cure deficiencies (rec. docs. 88, 89), Plaintiffs finally filed a brief opposing the Motion for Summary Judgment. (Rec. doc. 91). Shell Offshore then filed its reply. (Rec. doc. 90).

On March 14, 2025, eleven days after Shell Offshore's Reply, Plaintiffs filed a Motion for Leave to File Amended and Supplemental Opposition to Shell Offshore's Motion for Summary Judgment (rec. doc. 108), urging the Court to grant them leave to file an entirely new opposition, raising new arguments, and adding new exhibits. This was after two failed attempts to file supplemental briefing and amendments without seeking leave. (Rec. docs. 104, 107). Shell Offshore filed a Motion for Leave to File Sur-Reply Memorandum in Support of Motion for Summary Judgment on March 17, 2025, wherein it addresses the new arguments raised by Plaintiffs in their Motion for Leave to File Amended and Supplemental

4

Opposition. (Rec. doc. 110). On March 21, 2025, approximately three months after Shell Offshore moved for summary judgment, Plaintiffs filed their own Motion for Summary Judgment. (Rec. doc. 113). Shell Offshore filed an Opposition. (Rec. doc. 114).

II. **Plaintiffs' Motion for Leave to File Amended and Supplemental Opposition to Shell Offshore's Motion for Summary Judgment and Shell Offshore's Motion for Leave to File Sur-Reply Memorandum in Support of Motion for Summary Judgment**

In their Motion for Leave to File Amended and Supplemental Opposition to Shell Offshore's Motion for Summary Judgment (rec. doc. 108) Plaintiffs point to Federal Rule of Civil Procedure 15(a)(2) in support of their position that this Court should grant leave to amend. Rule 15(a)(2) provides that a party may amend its pleading only with the opposing party's written consent or the court's leave and that the court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has instructed that the "district court must possess a 'substantial reason' to deny a request for leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Factors relevant to the consideration of a motion for leave under Rule 15(a) include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

Here, substantial reasons exist to deny Plaintiffs' request for leave to amend. As an initial matter, Rule 15 provides for leave to amend a "*pleading*." Plaintiffs seek to amend their opposition, which is not a "pleading" as defined in Federal Rule of Civil Procedure 7(a).[2] *See*

---

[2] Under Federal Rule of Civil Procedure 7(a) the following are pleadings: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.

5

*Cooley v. Marshal*, No. 2:09-CV-00559-RLH, 2011 WL 3240453, at *4 (D. Nev. July 28, 2011) ("... Rule 15 provides a mechanism to amend a *pleading,* and an opposition to a motion is not a pleading."). Similarly, under Rule 15(d), supplementation is not appropriate here, as that rule states that the court may permit supplementation "setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented."[3] Fed. R. Civ. P. 15(d) (emphasis added). Here, there is no evidence that new events transpired that would make a supplemental pleading, or in this case, briefing, appropriate.

Furthermore, Plaintiffs attempt to improperly use Rule 15 as a vehicle to present new, untimely arguments to the Court. Plaintiffs urge this Court to grant leave to amend under the guise of needing to "correct an earlier deficiency" and to "further clarify narrow the issues before this Court." (Rec. doc. 108-1 at 1–2). However, the deficiency in their original opposition has already been remedied,[4] and rather than narrowing or clarifying issues, Plaintiffs' counsel completely re-wrote their opposition, raising entirely new arguments for the first time. Were this Court to allow amendment, it would be allowing Plaintiffs' counsel to litigate new issues by improperly using Rule 15 to maneuver around the deadline for their opposition—a deadline that has already been extended. (Rec. doc. 79) (granting Plaintiffs' motion for extension of time to respond to Shell Offshore's motion for summary judgment); *see Cooley*, 2011 WL 3240453, at *4 (finding a Rule 15 motion to amend improper where

---

[3] Plaintiffs do not cite Rule 15(d) or any other law regarding supplementation. However, their Motion for Leave to Amend refers to exhibit 1 as a "Supplemental Opposition." (Rec. doc. 108-1 at 2).
[4] Plaintiffs' original opposition was deficient for failure to provide a statement of material facts. (Rec. doc. 86). After a failed attempt to remedy that deficiency (rec. doc. 89), Plaintiffs cured the deficiency through an attachment of their statement of contested/uncontested facts. (Rec. doc. 91). Thereafter, Plaintiffs twice attempted to file an "amendment/supplement" to their original opposition, each containing a re-written opposition and 10 new exhibits, and each without seeking leave of court. (Rec. doc. 104, 107). Lastly, Plaintiffs filed the Motion for Leave to Amend presently before this Court, alleging a need to "correct an earlier deficiency." (Rec. doc. 108-1 at 1).

6

Plaintiff sought to amend their opposition to Defendants' motion for summary judgment to address arguments in Defendants' reply) ("This Court will not condone [Plaintiff's] attempt to improperly use Rule 15 to rebut [Defendant's] reply."). Relatedly, nearly all factors considered in a motion for leave to amend—undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment—are negatively implicated here. For these reasons, Plaintiffs' Motion for Leave to Amend is denied. Because Shell Offshore's Motion for Leave to File a Sur-Reply only addresses the new arguments raised in Plaintiffs' Motion for Leave to Amend, it is also denied.

### III.     Shell Offshore's Motion for Summary Judgment

#### A.     Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the

nonmoving party must marshal evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies the facts that are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249–50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). A court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140

8

F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322–25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

### B. Law and Analysis

#### 1. Operational Control and Authorization of Contractor's Negligent Acts

The parties do not dispute, and the Court has previously noted, that Louisiana tort law applies here as surrogate federal law pursuant to the Outer Continental Shelf Lands Act (OCSLA).[5] (Rec. docs. 43 at 4–5; 50 at 4). Louisiana employs a duty-risk analysis to determine whether liability for negligence exists. *Brewer v. J.B. Hunt Transp., Inc.*, 35 So. 3d 230, 240 (La. 2010). The duty-risk analysis consists of five elements that plaintiff must prove: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries;

---

[5] The Auger tension leg platform where Plaintiff's accident occurred is located on the outer continental shelf. Federal law applies to the outer continental shelf, including artificial islands on thereof, "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State." 43 U.S.C. § 1333(a)(1)(A)(ii). Oil and gas offshore platforms are treated as artificial "islands." *Earnest v. Palfinger Marine USA, Inc.*, 90 F.4th 804, 810–11 (5th Cir. 2024) (quoting *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 361 (1969)). "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003).

9

(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Id.* "Whether a duty is owed is a question of law; whether defendant has breached a duty owed is a question of fact." *Id.*

It is a well-established general rule under Louisiana law that a principal is not liable for negligent acts of its independent contractor committed in the course of performing its contractual duties. *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 380 (5th Cir. 2001). This rule, however, is subject to the following exceptions: "(1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911–12 (5th Cir. 1997). Because placing chocks on a helicopter is not an ultrahazardous activity, and neither party argues such, only the operational control and authorization prong of this test are implicated here.

In determining the issue of operational control, courts consider "whether and to what extent the right to control work has been contractually retained by the principal." *Coulter*, 117 F.3d at 912. Courts also consider whether the principal exercised actual control over the contractor. *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 729 (5th Cir. 2021). These two considerations "do not weigh equally . . . contractual retention weighs heavier." *Id.* at 729–30 (citing *Echeverry v. Jazz Casino Co., L.L.C.*, 988 F.3d 221, 232 (5th Cir. 2021)).

A principal's reservation of the right to monitor its contractor's performance and station a "company man" on the platform "who observes the contractor's activities, has the right to make safety recommendations to the contractor, and is obligated to report continuing unsafe work practices or conditions to his . . . superiors, does not mean that the principal controls the methods or details of the contractor's work." *Coulter*, 117 F.3d at 912.

"Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003).

Here, it is undisputed that H&P, Sessums' employer, was an independent contractor of Shell Offshore. Thus, the relevant inquiry here is if Shell Offshore exercised operational control, either actually or contractually, over H&P's acts or expressly or impliedly authorized those acts. As to reservation of contractual control, Shell Offshore only briefly mentions the contract when stating that H&P was responsible for safety training and supervision for its personnel, and Plaintiffs make no argument that Shell Offshore contractually retained operational control. (Rec. doc. 63-1 at 3). Plaintiffs' failure to make an argument regarding contractual reservation of control constitutes a waiver of this issue. *See Parkman v. W&T Offshore, Inc.*, 673 F. Supp. 3d 811, 825 (M.D. La. 2023) (finding that where Plaintiff failed to argue that the principal contractually retained operational control, Plaintiff conceded that issue to Defendants, warranting summary judgment on that issue); *Christmas v. Mentor ABI, LLC*, No. CV 14-1117, 2015 WL 5093457, at *6 (E.D. La. Aug. 28, 2015) ("A plaintiff's 'complete failure to raise any legal or factual issue regarding that claim in his Opposition [to defendant's summary judgment motion] constitutes a waiver of the issue.'").

On the issue of actual operational control, Shell Offshore argues that here, there is no evidence to suggest that Shell employees controlled or even supervised the work leading to Sessums' injury. (Rec. doc. 63-1 at 7). Shell Offshore points to Sessums' deposition wherein he testifies that (1) H&P conducted the safety meeting that day and no one from Shell Offshore was present; (2) that no Shell Offshore employee ordered Sessums to place the chocks on the wheels; (3) that Sessums' H&P supervisor gave the order to work the chopper;

11

and (4) that Sessums did not speak with any Shell employee or representative from the time he began work to the time of his injury that day.  (*Id.*).  Further, Shell Offshore argues that Plaintiffs cannot point to any unsafe work practice, and even if they could, Shell Offshore had no obligation to intercede in an independent contractor's decision of how to perform the work.  (*Id.*).  For these reasons, Shell Offshore argues, Plaintiff has not and cannot show that Shell Offshore exercised any operational control or authorized unsafe practices.  (*Id.*).

Plaintiffs argue that all the elements of negligence are satisfied and, in support, provide a series of quotes from Sessums' deposition related to his lack of training on placing chocks on a helicopter.  (Rec. doc. 91 at 3–4).  Plaintiffs also argue that Mr. Gregg Perkin, the President and Principal Mechanical Engineer of Engineering Partners International, produced an affidavit ("the Perkin Report") suggesting that that Shell has a duty to provide its contractors with a workplace free of recognized hazards and that operations on the platform were being controlled and permitted by Shell Offshore.  In their Reply, Shell Offshore argues that the Perkin Report is inadmissible and should not be considered because it is an unsigned, unverified, draft that Plaintiffs have not shown the authenticity of.  (Rec. doc. 90 at 1).  Further, Shell Offshore asserts that although the Perkin Report suggests that Shell may have exercised general control over platform operations, it did not exercise operational control over Plaintiff's work with the chocks.  (*Id.* at 2).

As a preliminary matter, the Court must address the competency of the Perkin Report.  Shell Offshore's competency challenge references an earlier copy of the Perkin Report (rec. doc. 87-1) that was filed in error and subsequently replaced with a notarized, signed, non-draft version of the Perkin Report.  (Rec. doc. 91-3).  The later-submitted affidavit of Mr. Gregg Perkin renders Shell Offshore's competency argument moot.  The later-submitted

12

affidavit (rec. doc. 91-3) satisfies the issues Shell Offshore raised—that the initial affidavit was a draft, unsigned, unverified, and not shown to be authentic. Because the later-submitted Perkin Report remedies the competency issues raised by Shell Offshore, the Court will consider it in its analysis. *See Richoux v. Grand Isle Shipyard, Inc.*, No. CV 12-1020, 2013 WL 5935172, at *1 (E.D. La. Nov. 5, 2013) (determining that where plaintiff submitted an unsigned, unnotarized, affidavit in support of their opposition to summary judgment, then subsequently submitted a signed and notarized version, the initial defect was insufficient to defeat plaintiff's affidavit).

As to actual control, even viewed in the light most favorable to the non-moving Plaintiffs, the evidence Plaintiffs present does not create a genuine issue of material fact. Plaintiffs' Opposition recognizes the existence of the operational control exception then strangely focuses on the elements of negligence, despite needing to satisfy the operational control exception for Shell Offshore to be held liable. To the extent that Plaintiffs arguments can be interpreted to assert that Shell Offshore exercised actual control, the evidence they cite is insufficient to overcome summary judgment.

Actual operational control presents a high bar. "Absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal . . . cannot be liable under the operational control exception." *Fruge ex rel. Fruge*, 337 F.3d at 564 (citing *Coulter,* 117 F.3d at 912). "The Fifth Circuit has long held that there is no operational control unless the principal retains control over the methods and manner of the work, *i.e.*, gives 'how to' instructions to the independent contractor." *Grammer v. Patterson Services, Inc.,* 860 F.2d 639, 645 (5th Cir. 1988).

13

Plaintiffs allege that according to the Perkin Report, "the operations on the Platform were being controlled and permitted by Shell." However, that argument is conclusory and fails to point to any "how to" instructions or express or implied order on the part of Shell Offshore as required by Fifth Circuit precedent. (Rec. doc. 91 at 4). Plaintiffs point to Shell Offshore's failure to conduct safety meetings and evidence suggesting a lack of communications between Shell Offshore and H&P, arguing that Shell Offshore's inaction caused the incident.[6] (Rec. doc. 91 at 4–5). However, that evidence suggests that actual control was in the hands of H&P, not Shell Offshore. Indeed, Sessums was ordered to place the chocks on the wheels of the helicopter by Jacob Keyes, a lead roustabout, who was ordered to convey that message by Scully, Sessums' supervisor—both of whom work for H&P. (Rec. doc. 63-1 at 7). No evidence suggests any involvement on the part of Shell Offshore. Because Plaintiffs failed to present any evidence creating a genuine issue for trial, Shell Offshore is entitled to summary judgment on the issue of actual operational control.

### 2. Independent Duty

Shell Offshore argues that it owed no duty to Plaintiff related to the incident. Plaintiffs' opposition acknowledges, but then largely ignores, the operational control exception and argues that the elements of negligence are satisfied. To the extent that those arguments can be interpreted as dispute over whether Shell Offshore was independently negligent, there is no existing fact dispute for trial. As explained above, a principal is generally not liable for negligent acts of its independent contractor committed in the course

---

[6] If Plaintiffs' intent is to raise an implied authorization argument with this evidence, that argument fails. *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 731 (5th Cir. 2021) (finding that the principal must "expressly or impliedly" authorize the "particular manner" which rendered the work unsafe) ("Observing but failing to object to an unsafe work practice does not create a fact dispute").

14

of performing its contractual duties. *Roberts, Inc.*, 266 F.3d at 380. However, in addition to the above-mentioned exceptions, a principal may also be liable for his own independent negligence. *Rakiep v. Hess Corp.*, No. CV 24-1987, 2024 WL 4393168, *4 (E.D. La. Oct. 3, 2024) (citing *Coleman*, 19 F.4th at 734). A principal does not have any obligation to provide its independent contractor with a safe place to work unless the principal either affirmatively assumes that duty or creates a workplace hazard. *Id.* Further, a principal has no obligation to intercede in an independent contractor's decision as to how to perform the work. *Id.* (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir. 1987)).

Here, there is no evidence that Shell Offshore created a workplace hazard. Plaintiffs allege that Shell Offshore created the hazard by failure to conduct safety meetings and by a lack of communications with its contractors, which allowed for rushed operations. However, "a principal does not create the hazard when it does not 'control the operation of the particular activity during which the plaintiff was allegedly injured.'" *Coleman,* 19 F.4th at 734 (quoting *Zepherin v. Conoco Oil Co.*, 884 F.2d 212, 213 (5th Cir. 1989)). As explained above, Shell Offshore did not control the operations of the activity during which Sessums was allegedly injured, *i.e.*, ordering him to place the chocks on the wheels of the helicopter. Employees of H&P, the independent contractor, controlled those operations, and Shell Offshore had no duty to intercede. For these reasons, Shell Offshore is not independently negligent.

### 3. Premises Liability

Under Article 2317.1 of the Louisiana Civil Code, a plaintiff may proceed on a theory of premises liability against an owner. That article states that "the owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing

that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. Civ. Code art. 2317.1. To prevail on a theory of premises liability under Article 2317.1, a plaintiff must prove that: "(1) the thing which caused damages was in the control or custody of the defendant; (2) the thing had a defect that created an unreasonable risk of harm; (3) the injuries were caused by the defect; and (4) the defendant had actual or constructive knowledge of the defect." *McDuffie v. Hillstone Rest. Grp., Inc.*, No. CV 16-6733, 2017 WL 4011205, at *2 (E.D. La. Sept. 12, 2017) (citing *Nelson v. Louisiana Stadium and Exposition Dist.*, 832 So.2d 1043, 1047 (La. App. 4 Cir. 2007).

Shell Offshore argues that Plaintiffs cannot prove any of the elements of premises liability. (Rec. doc. 63-1 at 8–9). Specifically, Shell Offshore notes that only H&P employees were involved in the work being performed at the time of the incident, suggesting that Shell did not have control over the chocks. (*Id.*). Further, Shell Offshore points to Sessums' testimony where he states that the chocks were not defective. (*Id.*). Because they were not defective, elements three and four necessarily cannot be met. In their Opposition, Plaintiffs allege that Sessums' deposition "clearly indicates" that that each element of Article 2317.1 premises liability is satisfied. (Rec. doc. 91 at 5). However, Plaintiffs do not provide any deposition citations. In reply, Shell Offshore argues that Plaintiffs have not presented the Court with evidence creating a genuine issue of material fact and, instead, offers the complete transcript of Sessums, with no citations, which this Court does not have a duty to sift through.

Plaintiffs' Opposition fails to identify specific evidence to support their claim. Instead, Plaintiffs attach Sessums' 207-page deposition, which they reference generally and without

16

any pinpoint citations. As the non-moving party, Plaintiffs have the burden of presenting evidence to demonstrate the existence of a material fact. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). To satisfy their burden, Plaintiffs are required to "identify *specific* evidence in the record, and to articulate the '*precise manner*' in which that evidence supported their claim." *Id.* (emphasis added); *see also Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) ("Rule 56 'does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"). By simply attaching Sessums' deposition to their Opposition, without pointing to any specific substance, Plaintiffs failed to meet this burden.

Furthermore, Plaintiffs' argument consists of only a single conclusory statement wherein they allege that Sessums' deposition "clearly indicates" that that each element of Article 2317.1 premises liability is satisfied. That is not competent summary judgment evidence. *See Forsyth*, 19 F.3d at 1533 (". . . unsubstantiated assertions are not competent summary judgment evidence."). "Conclusory allegations and the mere argued existence of a factual dispute are insufficient to defeat an otherwise properly supported motion." *Coste v. Jackson*, No. CV 13-119, 2013 WL 4007501, at *3 (E.D. La. Aug. 5, 2013). Accordingly, Plaintiffs' argument is insufficient to preclude summary judgment.

Regardless, this Court reviewed Sessums' deposition and found no evidence creating a genuine issue of material fact. To the contrary, Sessums testified that the chocks were not defective, suggesting that Plaintiffs could not satisfy elements three and four. (Rec. doc. 63-3 at 180). Further, the Court's conclusion that H&P exercised operational control over the incident negates the possibility of an issue of fact with respect to element one. For these reasons, Shell Offshore is entitled to summary judgment on the issue of premises liability.

## IV. Plaintiffs' Motion for Summary Judgment

Approximately three months after Shell Offshore moved for summary judgment, Plaintiffs filed a Motion for Summary Judgment. (Rec. doc. 113). Therein, Plaintiffs argue that Shell Offshore is responsible for the safety, operation, and condition of the platform, defects to things on the platform, that it violated its own operations manual and helicopter procedures, and that it was negligent. In their Opposition (rec. doc. 114), Shell Offshore argues that Plaintiffs' Motion is not in compliance with Rule 56 because it is riddled with violations of that rule's requirements. Further, Shell Offshore argues that any purported lack of warning on Shell Offshore's part did not cause the accident, and that Plaintiffs presented no argument to overcome Shell Offshore's independent contractor defense.[7]

The substance of these arguments need not be considered. Like their Motion for Leave to Amend, Plaintiffs' Motion for Summary Judgment appears to be another attempt to put untimely arguments before this Court. Any arguments that Plaintiffs did not raise in their Opposition to Shell Offshore's Motion to Summary Judgment are waived. *See Christmas*, 2015 WL 5093457, at *6 ("A party's failure to brief an argument in response to a summary judgment motion waives that argument."); *Ledet v. Fleetwood Enterprises, Inc.*, 245 F.3d 791, at *4 (5th Cir. 2000) ("... his complete failure to raise any legal or factual issue regarding that claim in his Opposition constitutes a waiver of the issue."); *McDaniel v. Shell Oil Co.*, 350 F. App'x 924, 927 (5th Cir. 2009) (finding that where plaintiff failed to raise a point in opposition to summary judgment, that issue was waived). Any arguments that Plaintiffs did

---

[7] Defendants Safety Management Systems, L.L.C., ("SMS") and David Boudreaux also oppose Plaintiffs' Motion for Summary Judgment. (Rec. doc. 116). SMS and Boudreaux dispute certain statements that implicate them in Plaintiff's Memorandum in Support of their Motion for Summary Judgment. Those arguments have no bearing on the Court's ultimate conclusion here.

raise in their original Opposition to Shell Offshore's Motion for Summary Judgment were addressed above. For the reasons outlined above, Shell Offshore is entitled to summary judgment in this case.

## V. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant, Shell Offshore Inc.'s, Motion for Summary Judgment (rec. doc. 63) is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant, Shell Offshore Inc.'s, Motion for Leave to File Sur-Reply Memorandum in Support of Motion for Summary Judgment (rec. doc. 110) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Amended and Supplemental Opposition to Shell Offshore's Motion for Summary Judgment (rec. doc. 108) and Plaintiffs' Motion for Summary Judgment (rec. doc. 113) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike and Alternatively Continue Shell Offshore's Motion for Summary Judgment (rec. doc. 85) is **DENIED AS MOOT**.

New Orleans, Louisiana, this  14th  day of April, 2025.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**