UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JEREMY SESSUMS, ET AL.**                                              **CIVIL ACTION**

**VERSUS**                                                              **NUMBER: 24-104**

**SHELL USA, INC., ET AL.**                                             **DIVISION: "5"**

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant, Danos, L.L.C.'s, Motion for Summary Judgment. (Rec. doc. 129). Jeremy Sessums, individually and as next of friend of his three minor children ("Plaintiffs"), filed an Opposition. (Rec. doc. 139). Danos, L.L.C. replied. (Rec. doc. 146). Having reviewed the parties' memoranda, the record, and the applicable law, the Court rules as follows.[1]

**I.   Background**

This case arises from an accident on an offshore tension-leg platform on the Auger pipeline located in the Gulf of Mexico ("the rig"). (Rec. doc. 44 at 2 ¶ 5). Plaintiff, Jeremy Sessums, brought this suit under the Outer Continental Shelf Lands Act ("OCSLA"), individually and as next friend of his three minor children, alleging neck, back, and head injuries from work performed as a roustabout on the rig. (*Id.* at 1-3 ¶¶ 2, 3, 5, 6). Sessums was an employee of Helmerich & Payne, Inc. (H&P), an independent contractor of Shell Offshore. (Rec. doc. 63-2 at 2 ¶ 3.2). H&P contracted with Shell Offshore to provide oil and gas drilling operations aboard the rig, which is owned by Shell USA, Inc. ("Shell USA"). (Rec. doc. 44 at 2 ¶¶ 6, 7, 14).

---

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) on December 18, 2024. (Rec. doc. 68).

1

Several entities and individuals were involved in safety on the rig. David Boudreaux was Shell USA's and Shell Offshore's "rig safety representative." (*Id.* at 1-2 ¶¶ 1, 12). Safety Management Systems, L.L.C., was contracted to perform "all safety related functions" aboard the rig, which were carried out by Boudreaux. (*Id.* 1-2 ¶¶ 1, 16). Shell USA's company man, who supervises its onsite operations, was Doye Sepulvado. (*Id.* 1-2 ¶¶ 1, 9). Finally, Danos, L.L.C., employed the helicopter landing officer, Taylor Thibodaux, who was contracted to supervise, coordinate, and be responsible for the safety of personnel travelling by helicopter. (*Id.* 1-2 ¶¶ 1, 13; rec. doc. 129-4 at 1). Plaintiffs brought the current suit against all above-named entities and individuals, except Sessums' employer, H&P.

Plaintiffs allege in their Second Amended Complaint that, on or about January 10, 2023, Sessums was performing his duties as roustabout until around 11 a.m. when the "Helideck's Deck Coordinator," an unnamed Danos employee, requested that he go and "work the choppers." (*Id.* at 3 ¶¶ 17, 19). In his deposition, Sessums clarified that H&P employee Jacob Keyes – not a Danos employee – gave that order. Keyes got a phone call from "Scully," Sessums' direct supervisor, stating that Sessums had to go "work the chopper." (Rec. doc. 63-3 ¶¶ 36:8-10, 48:6-24).

Sessums was thereafter "ordered . . . to place chocks on the wheels" by the Danos HLO, Thibodaux. (Rec. doc. 44 at 3 ¶¶ 17, 19). Thibodaux allegedly grabbed Sessums "by the clothes of [his] shirt" and said "come on, come on, come on" and directed Sessums to "go, go, go." (Rec. doc. 139-5 ¶¶ 64:20-25; 65:4-6). Sessums proceeded to place the chocks on the helicopter. (Rec. doc. 44 at 3 ¶¶ 17, 19). Plaintiffs allege that Sessums was not trained to place wheel chocks on a helicopter and had never previously done so. (*Id.* at 3 ¶ 20). After the helicopter was loaded up with people leaving the rig and their luggage, Sessums stated

in his deposition that Thibodaux "kind of grabbed my shirt" and "pulled me over to the side over there." (Rec. doc. 139-5 ¶¶ 69:25; 70:1). Sessums alleges that Thibodaux was "slinging his hands" and "talking about go, go, go, go, get the chocks." (*Id.* at 73:9-10). Sessums proceeded to unchock the helicopter, at which time he felt a pop in his back, causing his injuries. (*Id.* at 72-74).

Plaintiffs brought this action, denominating no particular cause of action, but sounding in negligence. Plaintiffs contend that Shell USA, Shell Offshore, Danos, and Safety Management Systems, "together occupied, managed, operated, and controlled the Auger platform and pipeline, including the Helipad, and all activities conducted thereon, as well as providing trained employees to do the work, providing training, supervision, direction, and control over all aspects of work." (*Id.* at 3 ¶ 21). Plaintiffs go on to allege specific duties owed by each Defendant related to safety on the rig. (*Id.* at 3 ¶¶ 22, 23, 24, 25, 26, 27, 28, 29, 30, 31). According to Plaintiff, Thibodaux, among others, "had a duty to exercise reasonable care in carrying out their operations conducted thereon, to provide a safe workplace for Plaintiff and the other workers; and to provide necessary level of staffing, training, supervision, direction, management, proper equipment, and adequate communications for the safety of the workers." (*Id.* at 3 ¶ 22).

With respect to each Defendant, Plaintiffs assert that "there was a glaring and overt lack of congruency and consistency with the safety, supervision and oversight . . . with respect to the operations of the Auger platform and pipeline and the workers they employed, monitored, trained, housed, and supervised." (*Id.* at ¶ 32). Plaintiffs also list specific failures on the part of Defendants that they describe as "foreseeable and producing cause of the incident and of Plaintiff's injuries and damages" and having "created a dangerous and unsafe

3

condition for workers on the premises . . ." (*Id.* at ¶¶ 33, 34, 35, 36, 37). Finally, Plaintiffs list 18 identical "acts and/or omissions" separately for each Defendant, that they claim proximately caused Sessums' injuries. (*Id.* at ¶¶ 39, 40, 41, 42, 43, 44, 45, 46, 47).

Shell USA, Shell OffShore, and Sepulvado filed a motion to dismiss, which the Court granted in part, affording Plaintiffs the opportunity to amend their complaint for the second time, which they did. (Rec. doc. 43 at 1). Thereafter, the Court granted a motion to dismiss brought by Shell USA and Sepulvado, concluding that the allegations in Plaintiff's Second Amended Complaint fail to establish a legal duty of either and declining to afford Plaintiffs an additional chance to amend their claims. (Rec. doc. 50 at 8). On December 13, 2024, Shell Offshore moved for summary judgment. (Rec. doc. 63). This Court granted that Motion. (Rec. doc. 118). Danos, the only remaining Defendant, has now moved for summary judgment. (Rec. doc. 129).

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is

no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must marshal evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). A court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be

presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### III.    Law and Analysis

#### A.    "No Evidence" Motion for Summary Judgment

As an initial matter, Plaintiffs argue in their Opposition that Danos' motion is a "no evidence motion for summary judgment," which is not permitted in federal court. (Rec. doc. 139-1 at 8). Plaintiffs argue that Danos' Motion should fail for that reason. *Id.* at 9. Danos does not specifically address this contention in its Reply.

A "no evidence motion for summary judgment" involves moving for summary judgment ". . . without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Castillo v. Depot*, No. 13-3249-P, 2014 WL 12531504, at *1 (N.D. Tex. Aug. 15, 2014) (quoting *Celotex,* 477 U.S. at 328). "It is not sufficient to merely list the elements of the claim and state that there is no evidence to support the elements." *Id.* (quoting *Seastrunk v. Darwell Integrated Tech.,* No. 5-0531, 2008 WL 190316, at *2-3 (N.D. Tex. Jan. 22, 2008)). The moving party must cite to the record to demonstrate a lack of evidence that supports the nonmovant's claims. *Id.*

The instant motion is not a "no evidence motion for summary judgment" and therefore does not fail on those grounds. Danos offers more than conclusory statements that Plaintiffs have no evidence to support the elements of their claim—it cites to the record numerous times. (Rec. doc. 8-9). Danos satisfied its obligation as moving party to "inform the court of the basis for the summary judgment motion and . . . point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues." *Bank of Am., N.A. v. Fulcrum Enters., LLC*, 20 F. Supp. 3d 594, 602 (S.D. Tex. 2014) (citing *Celotex Corp.,* 477 U.S. at 328).

### B.     The Duty Element and Whether a Special Relationship Existed

The parties do not dispute, and the Court has previously noted, that Louisiana tort law applies here as a surrogate federal law pursuant to the Outer Continental Shelf Lands Act ("OCSLA").[2] (Rec. docs. 43 at 4-5; 50 at 4). Louisiana employs a duty-risk analysis to determine whether liability for negligence exists. *Brewer v. J.B. Hunt Transp., Inc.*, 35 So. 3d 230, 240 (La. 2010). The duty-risk analysis consists of five elements that a plaintiff must prove: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5)

---

[2] The Auger tension leg platform where Plaintiff's accident occurred is located on the outer continental shelf. Federal law applies to the outer continental shelf, including artificial islands on thereof, "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State." 43 U.S.C. § 1333(a)(1)(A)(ii). Oil and gas offshore platforms are treated as artificial "islands." *Earnest v. Palfinger Marine USA, Inc.*, 90 F.4th 804, 810-11 (5th Cir. 2024) (quoting *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 361 (1969)). "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003).

actual damages." *Id.* "Whether a duty is owed is a question of law; whether defendant has breached a duty owed is a question of fact." *Id.*

Louisiana law generally imposes no affirmative duty to intervene in the unsafe acts of another, absent some special relationship between the parties. *See Strickland v. Ambassador Ins. Co.,* 422 So.2d 1207, 1209 (La. App. 1st Cir. 1982). This is particularly so when there is no contractual privity between the plaintiff and the alleged tortfeasor. *Gennuso v. Apache Corp.*, WL 2117822 at *4 (W.D. La. 2017). And this is true even if the intervention may prevent an accident from occurring. *Jones v. Buck Kreihs Marine Repair, L.L.C.*, 122 So. 3d 1181, 1186 (La. Ct. App. 2013) (citing *Herrington v. BP Products North America, Inc.*, 2003 WL 21362267 (E.D. La. June 10, 2003)).

The mere relaying of information between various disciplines does not create such a special relationship. *Gennuso*, WL 2117822, at *4. However, courts have suggested the presence of a duty owed by one independent contractor to another when one contractor exercises supervisory authority over the other. *See Herrington,* WL 21362267, at *2 (finding no duty on the part of the independent contractor where there was no evidence that the defendant was "overseeing" the operation as opposed to merely observing); *Parta v. Grand Isle Shipyard, Inc.*, WL 5262728, at *6 (W.D. La. Dec. 17, 2008) (granting summary judgment where the defendant, an independent contractor with no supervisory authority, owed no duty to intervene in a third-party employer's allegedly unsafe procedure).

Danos argues that it did not owe a duty to Sessums because its employee that was present for the accident, Thibodaux, had no supervisory authority over Sessums and was not overseeing or managing his work. (Rec. doc. 129-1 at 7-8). In support of that contention, Danos points to Sessums' deposition where he states that the instruction to assist with the

8

helicopter operations came from Jacob Keyes, an H&P employee, rather than Danos personnel. In their Opposition, Plaintiffs argue that a special relationship existed between Sessums and Thibodaux because Thibodaux was responsible for Sessums' training and safety, Thibodaux was in charge of the helideck team, Sessums was not properly trained to chock a helicopter, and Thibodaux physically controlled Sessums. *See* (rec. doc. 139-1). In reply, Danos reiterates its previous arguments, noting that a duty does not arise from the mere sharing of a worksite, and that Sessums could have exercised his stop work authority. (Rec. doc. 146 at 1-3).

Both parties seem to agree that existence of a duty hinges on whether there was a "special relationship" between Thibodaux and Sessums. As HLO, Thibodaux was the "person designated by the facility OIM/PIC to lead the helideck team" and was "responsible for and is in charge of activities on the helideck." (Rec. doc. 139-7 at 8). The helideck team is defined as "the group of people who conduct helideck operations on an offshore facility." *Id.* The fact that Sessums chocked and un-chocked the helicopter suggests that he was conducting helideck operations, thus making him part of the helideck team, and under the direction of Thibodaux.

Moreover, Thibodaux gave Sessums instruction, including telling him to "go, go, go" and grabbing him by his clothes. That suggests a genuine issue of fact regarding whether Thibodaux had supervisory authority over Sessums and differentiates this case from cases where a third-party independent contractor was just watching operations, rather than overseeing operations. *See Herrington*, 2003 WL 21362267 (finding no special relationship where there was no evidence suggesting that the safety man was "overseeing" the operation as opposed to just standing around watching).

9

Danos largely ignores the aforementioned facts, relying mainly on conclusory statements and on the fact that Sessums' original instruction came from an H&P employee rather than a Danos employee. That fact does not negate the possibility Thibodaux was overseeing the helideck operations that Sessums engaged in, giving rise to a duty to intervene. For these reasons, genuine issues of material facts exist regarding whether Thibodaux had some supervisory capacity over Sessums, and thus a duty to intervene in any unsafe acts, at the time of Sessums' injury. *See Miller v. Cox Operating*, LLC, No. 6:23-CV-00566, 2025 WL 2355612, at *7 (W.D. La. Aug. 13, 2025) (denying a motion for summary judgment and finding evidence of supervisory authority where an employee of an independent contractor's responsibilities included monitoring the safety of workers in the designated "hot zone").

### C. The Causation and Breach Elements

Danos argues – for the first time in its reply – that regardless of duty, Plaintiffs cannot establish causation or breach. (Rec. doc. 146 at 5-7). Neither Danos's Memorandum in Support of its Motion for Summary Judgement nor Plaintiffs' Opposition discuss causation or breach. "[A]rguments cannot be raised for the first time in a reply brief." *Little Tchefuncte River Ass'n v. Artesian Util. Co., Inc.,* 155 F. Supp. 3d 637, 657 (E.D. La. 2015) (quoting *Benefit Recovery, Inc. v. Donelon,* 521 F.3d 326 (5th Cir. 2008)). Accordingly, the Court declines to address the merits of those issues.

### V. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant, Danos, L.L.C.'s, Motion for Summary Judgment (rec. doc. 129) is **DENIED**.

New Orleans, Louisiana, this __25th__ day of August, 2025.

_____
**MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE**